IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL ENGLISH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 18-651 |
| ) | Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | Re: ECF Nos. 39, 48, and 51 |
| ALLEGHENY COUNTY, D. W. ) | |
| STECHSCHULTE, JR., KELLY VICTOR, ) | |
| RACHEL ALEXANDER, JANE DOE ) | |
| CERTIFIED NURSE PRACTITIONERS, and ) | |
| JANE DOE REGISTERED NURSES, ) | |
| ) | |
| Defendants. ) | |

# **OPINION AND ORDER**

**KELLY, Magistrate Judge**

Pending before the Court are Motions to Dismiss filed on behalf of Defendants Allegheny County, ECF No. 39, Kelly Victor, ECF No. 48, and D.W. Stechschulte, Jr. M.D. and Rachel Alexander, CRNP, ECF No. 51. For the following reasons, the Motions to Dismiss are granted as to Counts V and VI of Plaintiff's Amended Complaint, but are denied as to all remaining claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

Plaintiff Carl English ("Plaintiff" or "English"), a former inmate at the Allegheny County Jail ("ACJ"), filed this civil rights action pursuant to 42 U.S.C. § 1983, with a Complaint against Allegheny County and certain individuals alleged to have been involved in providing medical care to him at ACJ. ECF No. 1. After the filing of a Notice of Intention to Enter Judgment, ECF

No. 17, and Motions to Dismiss, ECF Nos. 20 and 24, Plaintiff filed an Amended Complaint, ECF No. 31, and now names as Defendants Allegheny County, Allegheny County employee Kelly Victor, RN, and Allegheny Health Network medical professionals D.W. Stechschulte, Jr., M.D., Rachel Alexander, CRNP. Plaintiff alleges that each of the individual defendants acted under color of state law and, in accordance with the policies, customs and practices of ACJ and, based upon their individual intentional acts and/or ACJ policies and practices, violated Plaintiff's civil rights.

In particular, Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights (Counts I – IV). Plaintiff further claims that Allegheny County violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, (Count V) and Section 504 of the Rehabilitation Act of 1973 (RA"), 29 U.S.C. § 701, *et seq.* (Count VI). Finally, Plaintiff brings state common law negligence claims against each medical provider involved in his care at ACJ (Counts VII – IX).

All Defendants have filed Motions to Dismiss Plaintiff's Amended Complaint, ECF Nos. 39, 48, and 51, asserting that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has filed a consolidated Brief in Opposition to Defendants' Motions to Dismiss, ECF No. 55, and Defendant Allegheny County has filed its Brief in Reply, ECF No. 56. The motions are ripe for consideration.[1]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF No. 59.

B.  **Factual History**

At this stage of the litigation and in the context of the pending Motions to Dismiss, the following facts alleged in the Amended Complaint are accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).

Plaintiff was incarcerated at ACJ from approximately June 3, 2016, through February 27, 2017. ECF No. 31 ¶ 14. Upon entry at ACJ, Plaintiff was medically processed and screened. He provided his medical history to those assigned as his treating medical staff, including Dr. Stechschulte, CRNP Alexander, and RN Victor (collectively, the "Medical Defendants"). Id. ¶ 15, 16. At that time, and throughout his incarceration, the Medical Defendants were provided and/or prepared records that identified Plaintiff as having diabetes, leg lymphedema, and neuropathy. Id. ¶ 17. Plaintiff's intake records reflect that he had suffered prior toe amputations on his right foot due to his diabetic and neuropathic condition, as well as a history of ulcers and wounds. Id. ¶ 18. In light of this history, Plaintiff was classified as a high risk for serious medical needs. Id. ¶ 19.

Plaintiff alleges that the Medical Defendants received daily reports concerning his medical status, and because of his high-risk status, each was required to timely evaluate Plaintiff's medical condition if and when manifestations of his diseases presented. Id. ¶¶ 21, 23. In accordance with ACJ policy and practice, the named Medical Defendants received notification of any sick call request submitted by Plaintiff, and each was authorized to make medical treatment recommendations, and/or take necessary medical measures for Plaintiff's assessment, treatment, and evaluation. Id. ¶¶ 28, 29.

Plaintiff alleges that beginning in June 2016, Plaintiff submitted numerous sick call requests seeking medication for his diabetes and neuropathy that were ignored. On August 12,

2016, a corrections officer alerted medical personnel regarding obvious swelling and increased symptoms, and requested that Plaintiff be seen that day. Three days later, Plaintiff was seen by CRNP Alexander, who did not examine Plaintiff's feet or perform an individualized assessment of his condition. One week later, Dr. Stechsculte reviewed Plaintiff's medical records related to his sick call requests, but did not meet with Plaintiff or provide any follow up care, despite indications that Plaintiff's records showed dangerously high blood glucose levels, foot pain, swelling and cracking, nausea and loss of appetite. Thereafter, Plaintiff continued to report his worsening condition and submitted sick call requests, each of which remained unanswered. Id. ¶¶ 31 – 59.

Beginning in November 2016, Plaintiff reported directly to CRNP Alexander and RN Victor that he was experiencing pain, chills, foot swelling, headaches, blurred vision, loss of appetite, nausea, and vomiting. Id. ¶ 59. Despite the continuation and worsening of these symptoms throughout December 2016, Plaintiff alleges CRNP Alexander and RN Victor failed to treat his obvious medical distress, and refused to take medical action to treat or care for him. Id. ¶ 60-65. In late December 2016, CRNP Alexander and/or RN Victor reported Plaintiff's worsening condition to Dr. Stechschulte, who failed to take any medical action to treat him. Id. ¶ 66. Plaintiff continued to request medical treatment through early to mid-January 2017, and he was ultimately seen on January 14, 2017, where it was noted that he had a wound to right little toe which was odorous and bleeding. Id. ¶ 76. Despite the record of his condition, he remained untreated by Dr. Stechschulte. Id. ¶ 79.

On January 20, 2017, Plaintiff was rushed to Allegheny General Hospital, where he was diagnosed with a severe diabetic foot abscess and deep tissue infection. Id. ¶¶ 80-83. Plaintiff's right fifth toe was amputated on January 23, 2017, and he was discharged from the hospital on

January 25, 2017.  Id. ¶¶ 87-88.  Plaintiff alleges that the infection which began and remained untreated at ACJ eventually spread to his right leg. Despite continued medical treatment after his release from ACJ, Plaintiff suffered the amputation of his right leg.  Id. ¶¶ 89-94.

Plaintiff alleges that while incarcerated at ACJ, he was aware that other diabetic inmates suffered unstable glucose levels, inadequate diabetes treatment management, and that this inadequate treatment led to at least one other inmate suffering a foot amputation. Id. ¶¶ 50-56. Plaintiff also learned that other diabetics at ACJ suffered severe medical conditions causing emergency situations and surgeries, because of inadequate diabetic care.  Id. ¶ 57.

## II.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).  The United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

The United States Court of Appeals for the Third Circuit has prescribed the following three-step approach to determine the sufficiency of a complaint:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), *citing* Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)(quoting Iqbal, 556 U.S. at 675, 679).

### III. DISCUSSION

#### A. Eighth Amendment Medical Indifference Claims – Medical Defendants (Counts I, II, and III)

The ban on cruel and unusual punishment set forth in the Eighth Amendment to the United States Constitution extends to prohibit a prison official's "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state an Eighth Amendment deliberate indifference claim, Plaintiff must plausibly allege: (1) deliberate indifference on the part of the prison official; and, (2) a serious medical need.  Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016). In "determining what constitutes deliberate indifference," courts "have consistently held that mere allegations of malpractice do not raise issues of constitutional import." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d

6

326, 346 (3d Cir. 1987). "Nor does mere disagreement as to the proper medical treatment support a claim of an [E]ighth [A]mendment violation." Id. However, officials act with deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Additionally, prison officials act with deliberate indifference by "intentional[ly] interfer[ing] with prescribed treatment." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

A "serious medical need" is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attentions." Monmouth Cty., 834 F.2d at 347 (internal quotation marks omitted).

In support of each Motion to Dismiss, the named Medical Defendants rely upon allegations that in limited instances, each of them provided treatment or reviewed Plaintiff's complaints. The Medical Defendants contend that these allegations are fatal to Plaintiff's claim of deliberate indifference and, at best, establish a state law claim of negligence or merely a difference of opinion as to appropriate care. See, ECF No. 53 at 6 (3 visits over a six- month period of time with CRNP Alexander despite nearly a dozen sick call requests); ECF No. 53 at 7-8 (a concession that Dr. Stechschulte never personally examined Plaintiff despite ongoing notice of exacerbation of his condition, but arguing that upon his review medical records Dr. Stechschulte made "the medical decision that he did not need to personally see Mr. English in light of the other care he was receiving"); ECF No. 49 at 2 (contending that "the only allegations during the correct time period are that RN Victor became aware of Plaintiff's alleged medical

7

condition and reported the same to her superior, the Medical Doctor charged with Plaintiff's care.").

These arguments are wholly insufficient given the detailed allegations set forth in Plaintiff's Amended Complaint setting forth the participation of each named Medical Defendant in a prolonged pattern of delayed treatment or abject failure to treat, despite reports of specific symptoms that would place each on notice of substantial risk of serious harm. RN Victor is alleged to have to ignored Plaintiff's reports of severe pain, nausea, foot swelling and chills beginning in November 20, 2016, through December 2016. ECF No. 31 ¶¶ 58-66. CRNP Alexander is alleged to have failed to examine Plaintiff, or ensure that his reports on exacerbation of his condition with severe pain, chills, swelling, vomiting, bleeding and foot odor resulted in prompt and adequate medical treatment. Id. ¶¶ 35-38, 44-46, 58-59, 62 -64, 65, 68-69. 70-71, 77, 79. Finally, as to Dr. Stechschulte, the Amended Complaint alleges that despite his knowledge of repeated sick call requests, referrals for medical attention, and review of medical records, he failed to treat Plaintiff until Plaintiff suffered the amputation of his toe. Id. ¶¶ 31, 34, 42, 47-49, 60, 63, 67, 68, 74, 76, 79. It is apparent to the Court that at this early stage of the litigation, Plaintiff's Amended Complaint contains sufficient allegations to state a claim of deliberate indifference to a serious medical need, in violation of the Eighth Amendment. Accordingly, the Motions to Dismiss Plaintiff's Eighth Amendment claims against the named Medical Defendants are denied.

> **B.    Negligence Claims – Medical Defendants (Counts VII, VIII and IX)**

CRNP Alexander, Dr. Stechschulte, and RN Victor seek dismissal of Plaintiff's state law medical negligence claims. The Medical Defendants contend that, as to CRNP Alexander and RN Victor, the Amended Complaint fails to allege facts sufficient to state a negligence claim

8

and, as to Dr. Stechschulte, that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim.

In Pennsylvania, medical malpractice is defined as the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003). "[T]o prevail in a medical malpractice action, a plaintiff must 'establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.'" Id. (quoting Hightower–Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997)); and see Ditch v. Waynesboro Hosp., 917 A.2d 317, 321–22 (Pa. Super. 2007), *aff'd*, 17 A.3d 310 (Pa. 2011).

In this case, through his Amended Complaint, Plaintiff has sufficiently alleged that all named Medical Defendants knew or should have known that Mr. English consistently reported that he was suffering from an exacerbation of his diabetes and neuropathy, and further, that his reported symptoms indicated the necessity for prompt treatment. Plaintiff alleges that each of the named Medical Defendants failed to act upon the knowledge in his or her possession to treat Plaintiff's deteriorating condition, and that such conduct is in violation of the generally accepted standards of care owed by those in the medical profession. The Amended Complaint further alleges that as a result of the conduct of each of the Medical Defendants, Plaintiff suffered the loss of a toe and, ultimately, his right leg. Under these circumstances, Plaintiff has sufficiently alleged a claim for medical malpractice under Pennsylvania law and the Motions to Dismiss Plaintiff's medical malpractice claims are denied.

### C. <u>Monell</u> Claim – Allegheny County (Count IV)

Count IV of Plaintiff's Amended Complaint sets forth a claim pursuant to <u>Monell v. Dep't of Social Svcs. of New York City</u>, 436 U.S. 658 (1978), against Allegheny County. In particular, Plaintiff alleges that "[d]espite having an express or implied duty to provide adequate medical care to inmates with serious medical needs at the ACJ, Allegheny County maintains a widespread custom among its medical staff of not providing those inmates with adequate medical care." ECF No. 31 ¶ 125. Plaintiff further alleges that despite receiving repeated requests by inmates for medical treatment, Allegheny County routinely and intentionally disregards such requests, and that this practice or custom has led to the filing of "numerous complaints in the United States [District] Court for the Western District of Pennsylvania in which [inmates] have successfully established that the ACJ provided them with inadequate medical care." <u>Id.</u> ¶ 128. This practice has led to significant harm suffered by inmates in the care of ACJ and to Plaintiff, who suffered actual physical injury, pain and suffering. <u>Id.</u> ¶¶ 130 – 132.

The law with regard to civil rights claims against a municipality was recently summarized in <u>Kelley v. O'Malley</u>, 328 F. Supp. 3d 447 (W.D. Pa. 2018):

> In <u>Monell</u>, the United States Supreme Court held that municipalities and governmental units are "persons" subject to liability under 42 U.S.C. § 1983. <u>Monell</u>, 436 U.S. at 658-60, 98 S.Ct. 2018. As a result, a governmental entity can be held liable under Section 1983 when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." <u>Id.</u> at 694, 98 S.Ct. 2018. To establish governmental agency liability pursuant to Section 1983, a plaintiff is required to identify the policy, custom or practice of the agency that results in the constitutional violation. <u>Id.</u> at 690-91, 98 S.Ct. 2018.
>
> "A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." <u>Connick v. Thompson</u>, 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (*citing* <u>Monell</u>, 436 U.S. at 691-92, 98 S.Ct. 2018) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal

policy' caused their injury.")); Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (*citing* City of Canton v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (observing that a City "may be held liable if its policy actually causes injury.") (emphasis added)). But, under Section 1983, local governments are responsible only for "their own illegal acts," and "are not vicariously liable under § 1983 for their employees' actions." See id. (citations omitted). Rather, a plaintiff must establish the existence of a municipal "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694, 98 S.Ct. 2018.

Policy is made when a "decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), *superseded in part by statute*, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1072, § 102). Acts of municipal personnel may be imputed to a policy or custom of a municipal entity, rendering the municipal entity liable under Section 1983: (1) "where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;'" (2) "where 'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself;'" and (3) "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584, n. 10 (3d Cir. 2003) (quoting Justice Souter's dissenting opinion in Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 417-18, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) for its "cogent and concise summary of the three situations in which a policy or custom sufficient to impose liability may arise"). Since a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy, custom, or failure to train" in the absence of a "conscious decision or deliberate indifference of some natural person," Simmons v. City of Philadelphia, 947 F.2d 1042, 1063 (3d Cir. 1991), the complaint must allege facts showing "that a policymaker is responsible either for the policy or, through acquiescence, for the custom," B.S. v. Somerset Cty., 704 F.3d 250, 275 (3d Cir. 2013) (quotation and citations omitted). Accordingly, to state a Monell claim upon which relief may be granted, a complaint must include the identity of the municipality's final policymaker and factual allegations that "link the alleged offending policies or customs to" the final policymaker. Rees v. Office of Children & Youth, 473 Fed. Appx. 139, 143 (3d Cir. 2012) (holding that a complaint cannot state a Monell claim if it "fails to link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority").

Kelley v. O'Malley, 328 F. Supp. 3d at 459–61.

Allegheny County seeks dismissal of Plaintiff's Monell claim and contends that Plaintiff's Amended Complaint fails to allege facts "that support the conclusion that there existed a County policy or custom that denied English access to appropriate medical care." ECF No. 40 at 9. Allegheny County points to its employment of medical personal who were charged with Plaintiff's care, and Plaintiff's receipt of medical treatment during his incarceration as sufficient evidence that no policy or custom of deliberate indifference exists. Allegheny County contends that, at best, Plaintiff's Amended Complaint alleges "a medical malpractice claim disguised as an Eighth Amendment violation." Id.

The Court finds that Plaintiff has alleged sufficient facts to survive the Motion to Dismiss with regard to his Monell claim. Plaintiff has alleged that Allegheny County has been on notice of long-standing issues with regard to the failure to deliver adequate medical treatment to inmates at the ACJ, and has participated as a named defendant in litigation filed in this Court with respect to such lapses. Plaintiff further alleges that numerous inmates with diabetes have suffered serious injury as a result of Allegheny County's practice of ignoring sick call requests for diabetes management and exacerbation of symptoms. Moreover, in response to the Motion to Dismiss, Plaintiff contends that the relevant policymaker, Dr. Stechshulte, "personally ignored and/or delayed necessary medical care or treatment to Mr. English, thereby evidencing the policy of custom … through his acts and edicts." ECF No. 55 at 19, and see ECF No. 31 ¶¶ 97-102.

It remains to be determined whether, after appropriate discovery, Dr. Stechshulte may be deemed the responsible Allegheny County policymaker upon whom Monell liability may rest, and whether there is sufficient evidence of a custom or practice with regard to the failure to deliver necessary medical care to diabetics at ACJ but, at this stage of the litigation, Plaintiff has

12

sufficiently stated facts to set forth a claim that Allegheny County's custom or practices violated his Eighth Amendment rights. Accordingly, Allegheny County's Motion to Dismiss Count IV of Plaintiff's Complaint is denied.

### 4. ADA and Section 504 Claims – Allegheny County (Count V and Count VI)

Plaintiff asserts two substantively equivalent disability discrimination claims against Allegheny County pursuant to Title II of the ADA (Count V) and Section 504 of the RA (Count VI). Plaintiff's claims arise out of alleged exclusion from the benefits of medical programs and care at the ACJ by reason of his documented medical disabilities. ECF 31 at 20-22. Allegheny County contends that Plaintiff's claims should be dismissed because the failure to provide proper medical treatment does not constitute a violation of either the ADA or Section 504. ECF No. 40 at 10.

To state a claim for disability discrimination under Title II of the ADA, Plaintiff must allege that he: "(1) has a disability; (2) was otherwise qualified to participate in [an Allegheny County] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of h[is] disability." Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). The same standards govern claims pursuant to Section 504 of the Rehabilitation Act. Id., and see, Hollihan v. Pennsylvania Dep't of Corr., 159 F. Supp. 3d 502, 509 (M.D. Pa. 2016).

To sustain an ADA or Section 504 claim, Plaintiff must allege that he has been excluded from participation in services, programs, or activities *because of* his disability. See, Pierce v. Pitkins, 520 F. App'x 64, 67 (3d Cir. 2013) (dismissal of ADA claim is appropriate where inmate's complaint alleged a violation of the ADA but "failed to allege any facts that demonstrated that the alleged inadequate or improper medical care he received was because of a

disability."). See also, Brown v. Deparlos, 492 F. App'x 211, 215 (3d. Cir. 2012) (claim that defendants properly dismissed where plaintiff failed to "allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because of a disability"); Mutschler v. SCI Albion CHCA Health Care, 445 F. App'x 617, 621 (3d Cir. 2011) (dismissal appropriate where complaint alleges denial of adequate medical care, but fails to facts that demonstrate that alleged improper medical care was because of his disability); Bell v. Lindsay, 116 F. Supp. 3d 511, 518 (E.D. Pa. 2015) (same, and finding plaintiff stated Eighth Amendment claim).

In this case, Plaintiff fails to allege facts that would establish that he was denied appropriate medical care *because of* his diabetes, neuropathy or other ailments. Rather, Plaintiff alleges only that he was denied medical care and that this denial constitutes exclusion from a public service. Because such allegations fail to state a claim under either the ADA or Section 503 of the Rehabilitation Act, Allegheny County's Motion to Dismiss Counts V and VI is granted.

### D. CONCLUSION

For the foregoing reasons, the Motions to Dismiss, ECF Nos. 39, 48, and 51 shall be granted in part and denied in part. An appropriate Order follows:

### ORDER

AND NOW, this 30th day of April, 2019, upon consideration of the Motions to Dismiss filed on behalf of Defendant Allegheny County, ECF No. 39, Kelly Victor, RN, ECF No. 48, and D.W. Stechschulte, Jr. M.D. and Rachel Alexander, CRNP, ECF No. 51, and the briefs filed in support and in opposition thereto, ECF Nos. 40, 49, 53, 55, and 56, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED as follows:

(1) The Motion to Dismiss filed on behalf of Allegheny County, ECF No. 39, is denied as to Count IV of Plaintiff's Amended Complaint, but granted as to Counts V and VI;

(2) The Motion to Dismiss filed on behalf of Kelly Victor, ECF No. 48, is denied as to Counts III and IX of Plaintiff's Amended Complaint; and

(3) The Motion to Dismiss filed on behalf of D.W. Stechschulte, Jr. M.D., and Rachel Alexander, ECF No. 51, is denied as to Courts I, II, VII, and VIII.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2019

cc: All counsel of record by Notice of Electronic Filing